UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES EASTON,

      Plaintiff,

v.                                      CASE NO.:

GILBANE BUILDING COMPANY d/b/a Mills
Gilbane f/k/a W.G. Mills, Inc., a Rhode Island
corporation, W.G. MILLS, INC., a Florida
corporation, and MSH HOLDING, INC.,
a Florida corporation,

      Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, JAMES EASTON ("EASTON"), by and through his undersigned counsel, who hereby sues the Defendants, GILBANE BUILDING COMPANY d/b/a Mills Gilbane f/k/a W.G. MILLS, INC., a Rhode Island corporation, W.G. MILLS, INC., a Florida corporation, and MSH HOLDING, INC., a Florida corporation, and respectfully sets forth his Complaint and Demand for Jury Trial as follows:

### INTRODUCTION

1.     This is an action by EASTON under the Family and Medical Leave Act, 29 U.S.C. 2601, *et seq*. ("FMLA"), against Defendants.

2.     This is also an action by EASTON against Defendants under the Florida Civil Rights Act of 1992, Section 760.01, Fla. Stat. ("FCRA"), *et seq*.

### JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4.     This Court has supplemental jurisdiction over EASTON's state law claims under 28 U.S.C. § 1367.

5.     Venue is proper under 29 U.S.C. § 1391(b)(2) because (i) a substantial part of the events giving rise to this claim occurred in Manatee County, Florida; (ii) because two of the three defendants operate businesses from Manatee County, Florida

## PARTIES

6.     EASTON in an individual who resides in Orange County, Florida.

7.     Defendant, W.G. MILLS, INC., was a Florida corporation until it was merged into Defendant, GILBANE BUILDING COMPANY, on or about December 28, 2010.  Upon information and belief as part of the merger, Defendant, GILBANE BUILDING COMPANY, specifically or implicitly assumed the obligations of Defendant, W.G. MILLS, INC.  In Florida, Defendant, GILBANE BUILDING COMPANY, does business as "Mills Gilbane."

8.     On or about January 13, 2011, Defendant, W.G. MILLS, INC., again incorporated in Florida and has its principal place of business in Sarasota County, Florida.

9.     Defendant, GILBANE BUILDING COMPANY, is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

10.     Defendant, MSH HOLDING, INC., is a Florida corporation with its principal place of business in Manatee County, Florida.

11.     At all times material to EASTON's allegations, Defendant, MSH HOLDING, INC., leased employees, including EASTON, to Defendant, W.G. MILLS, INC.  While Defendant MSH HOLDING, INC., paid EASTON, Defendant, W.G. MILLS, INC., held EASTON out as its employee, retained supervisory control over EASTON and controlled the terms and conditions of employment of EASTON.

2

12.　From the beginning of EASTON's employment through the date of his unlawful termination, Defendants, W.G. MILLS, INC., and MSH HOLDING, INC., were his joint employer.

## GENERAL ALLEGATIONS

13.　EASTON was hired by Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., as a Business Development Representative in or around October 2003.

14.　From the beginning of his employment through the date of his unlawful termination, EASTON's immediate supervisors were Walter G. Mills, Lemuel Sharp III and Timothy Hensey. Mills, Sharp and Hensey were the principals of Defendants, W.G. MILLS, INC., and MSH HOLDING, INC.

15.　EASTON was later re-titled as Executive Director of Business Development by Defendants, W.G. MILLS, INC., and MSH HOLDING, INC., but his duties did not appreciably change.

16.　Throughout EASTON's employment, his job was to market and sell the construction management services of Defendants, W.G. MILLS, INC., to various public entities.

17.　Throughout EASTON's employment, EASTON heard Mills and Hensey make disparaging comments about African-Americans (including use of the "n-word"), especially when EASTON would remind Mills, Hensey and Sharp that the Defendants, W.G. MILLS, INC., and MSH HOLDING, INC., lacked any African-American managers, how race discrimination is illegal and how its discriminatory practices cast Defendant, W.G. MILLS, INC., in a negative light. Mills and Hensey advised EASTON that there would be no African-American managers so long as they were in charge. EASTON objected to the use of racial epithets and Defendants, W.G. MILLS, INC. and MSH HOLDING, INC.'s, refusal to hire African-American managers.

18.    Until the illegal acts against EASTON complained of herein commenced, he was regarded by Defendant, W.G. MILLS, INC., as its best salesperson, earning top salesperson awards in 2006, 2007, 2008 and 2009. EASTON was qualified to perform his job.

19.    Until the illegal acts against EASTON complained of herein commenced, EASTON's sales territory was comprised of Seminole, Pinellas, Hillsborough, Pasco, Polk, Broward, Citrus, Hernando, Brevard, Orange, Palm Beach and Lake counties, along with Sarasota County Public Schools and New College. EASTON also assisted in selling to Charlotte and Manatee counties, and to the State of Florida.

20.    In early to mid-February 2010, Defendant, W.G. MILLS, INC., held a marketing meeting. Among others, EASTON and Mills were present. At the meeting, Mills told EASTON that he was Defendant, W.G. MILLS, INC.'s, "best salesman" and that it "couldn't afford to lose" him.

21.    On or about February 26, 2010, EASTON was diagnosed with tongue cancer.

22.    EASTON immediately informed Mills, Sharp and Hensey of the diagnosis.

23.    On or about March 3, 2010, EASTON commenced radiation and chemotherapy treatments at the Moffitt Cancer Treatment Center in Tampa, Florida.

24.    Until being forced to commence FMLA leave (*see* ¶ 27, *infra*), EASTON continued to provide marketing and sales services to Defendant, W.G. MILLS, INC.

25.    On or about April 6, 2010 (while EASTON was still undergoing treatment), Mills emailed EASTON and advised him that he and Defendant, W.G. MILLS, INC., had concluded that EASTON was unable to "perform the essential functions of [his] job" and that his performance was "inadequate." Mills' contention was surprising since EASTON had

approximately $99 million in sales in the previous four months and because his sales performance in the previous years had dwarfed any other salesperson.

26.     In the April 6, 2010 email, Mills gave EASTON the option of taking FMLA leave or being disciplined for alleged poor performance.

27.     Upon receipt of the April 6, 2010 email, EASTON requested a meeting with Mills, Hensey and Sharp to discuss reasonable accommodations that would permit him to perform the "essential functions of his job" referenced (but not identified) by Mills in the email. However, such meeting was refused.

28.     Having no alterative other than disciplinary action if he refused to commence FMLA leave, EASTON sought and received FMLA leave from Defendants, W.G. MILLS, INC. and MSH HOLDIGNS, INC., beginning on April 27, 2010 (the FMLA start date was provided to EASTON by Jan Brownlee, Human Resources Director).

29.     At all times during his medical treatment and while he was on forced FMLA leave, EASTON was able to perform the essential functions of his job with reasonable accommodation.

30.     On or about July 12, 2010, EASTON timely returned to work from FMLA leave. At the time of his return, EASTON's voice was deeper, possibly due to the cancer treatments.

31.     When he returned from forced FMLA leave, EASTON was able to perform the essential functions of his job.

32.     On or about July 13, 2010, Hensey told EASTON that he was being "let go." Given his years of exemplary service and the fact that EASTON was entitled to reinstatement after his return from FMLA leave, EASTON immediately requested a meeting with Mills, Sharp and Hensey to discuss the matter.

33.     On or about July 14, 2010, EASTON met with Mills, Sharp and Hensey. At the meeting, EASTON was advised that he would be permitted to return from FMLA leave, albeit with very significant detrimental changes to the terms and conditions of his employment, specifically (i) EASTON's salary was reduced by approximately $1,000 a week; (ii) EASTON's territory was reduced to Orange, Seminole, Brevard and Lake counties (which was a serious blow to EASTON's ability to earn commissions); and (iii) EASTON was no longer permitted to earn commissions from sales to existing customers; instead EASTON was only permitted to earn commissions on sales to new customers in his reduced territory.

34.     At the meeting on or about July 14, 2010, EASTON was also advised that he would have ninety (90) days to obtain business from a new customer in his reduced territory or he would be terminated.

35.     Upon information and belief, none of Defendants, W.G. MILLS, INC. or MSH HOLDING, INC.'s, other salespersons' salaries or territories was reduced. In fact, Dean Banks, a salesperson with very few sales to his credit (and who was lesser qualified than EASTON), was the recipient of the counties that were removed from EASTON. Further, none of Defendants, W.G. MILLS, INC. or MSH HOLDING, INC.'s, other salespersons were restricted to earning commissions only on sales to new customers or advised that if they did not obtain new business within ninety (90) days they would be terminated.

36.     During the July 14, 2010 meeting, EASTON objected to Mills, Hensey and Sharp concerning the failure of Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., to reinstate him from his FMLA leave in a manner consistent with the law. Mills told EASTON he should be grateful that he had a job at all.

37.     Hensey later acknowledged to EASTON that the requirement that EASTON sell business to a new customer in his reduced territory in a 90-day period was next to impossible because the process of identifying a potential client, marketing services to it, going through the bidding process and winning a project took six (6) months to one (1) year.

38.     Before his unlawful termination, Mills told EASTON that the requirement that he sell business to a new customer within a 90-day period would be eliminated given the near impossibility of the task.  Instead, EASTON was to focus during the 90-day period on selling construction management services to Orange County Schools, Palm Beach County Schools and New College.  EASTON's reduced salary, reduced territory and reduced ability to earn commissions remained.

39.     During the 90-day period, EASTON was able to get Defendant, W.G. MILLS, INC., "short-listed" on an approximately $50 million Dr. Phillips High School with Orange County Public Schools and on an approximately $4 million seawall restoration project for New College.  EASTON was also able to sell a continuing services contract to the State of Florida.

40.     On or about October 8, 2010, EASTON again raised objections to the failure of Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., to reinstate him from FMLA leave in a manner consistent with the law.  Mills angrily told EASTON that he was forgetting his place.

41.     On or about October 12, 2010 Mills, Hensey and Sharp notified EASTON of his immediate termination.  The stated (pretextual) reason for EASTON's termination was his failure to sell business to a new customer within 90 days of July 14, 2010 (this is the same requirement that Mills told EASTON need not be fulfilled due to the near impossibility of fulfilling it).

42.     During the October 12, 2010 meeting, Mills told EASTON that they needed someone in his position that was physically fit and able to give 100 percent to the job. Mills told EASTON that it was obvious that his condition had diminished him and that he lacked the physical ability or stamina to continue working. Mills told EASTON that he should retire and enjoy whatever years he had left.     EASTON objected stating that he had been cleared for full duty, but Mills said the decision was final.

43.     During the October 12, 2010 meeting, which amounted to an airing of Mills' undeserved criticisms of EASTON, Mills told EASTON said that EASTON's objections to the use of racial epithets regarding African-Americans by Mills and Hensey and his positive feelings towards minority set-asides in the government contracts were irksome to Mills and Hensey. Mills told EASTON that his willingness to work side-by-side with African-Americans was a result of his indoctrination in the United States military as a young man.

44.     Plaintiff has retained undersigned counsel to represent him in this action and has agreed to pay such counsel a reasonable attorney's fee and appropriate costs.

## COUNT I
## FMLA-UNLAWFUL INTERFERENCE AGAINST ALL DEFENDANTS

45.     EASTON incorporates the allegations made in paragraphs 1 through 44 above as though fully set forth here.

46.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC.'s, failure to return EASTON to his same or substantially equivalent position upon his return from FMLA leave constituted a violation of 29 U.S.C. § 2615(a)(1).

47.     As a result of the violation of 29 U.S.C. § 2615(a)(1) as alleged herein, EASTON has been damaged.

48.     The violation of 29 U.S.C. § 2615(a)(1) was willful.

49.    Defendant, GILBANE BUILDING COMPANY, is liable as the successor to Defendant, W.G. MILLS, INC.

WHEREFORE, Plaintiff, JAMES EASTON, demands judgment against Defendants for:

(i)     All wages and benefits lost, including interest, as a result of their wrongful and willful acts;

(ii)    Reinstatement, and in lieu of reinstatement, front pay;

(iii)   Liquidated damages;

(iv)   Reasonable attorney's fees and costs; and

(v)    Such further relief as the Court deems just and proper.

## COUNT II
## FMLA – UNLAWFUL RETALIATION AGAINST ALL DEFENDANTS

50.    EASTON incorporates the allegations made in paragraphs 1 through 44 above as though fully set forth here.

51.    The actions of Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., including failing to restore EASTON to his same or substantially equivalent position (with the same territory and compensation) after the conclusion of his forced FMLA leave and their termination of his employment for opposing their denial of his right to such restoration of his position, sales territory and compensation, were motivated by retaliatory animus in violation of 29 U.S.C. § 2615(a)(2).

52.    As a result of the violation of 29 U.S.C. § 2615(a)(2) as alleged herein, EASTON has been damaged.

53.    The violation of 29 U.S.C. § 2615(a)(1) was willful. The violation of 29 U.S.C. § 2615(a)(1) was willful.

54.     Defendant, GILBANE BUILDING COMPANY, is liable as the successor to Defendant, W.G. MILLS, INC.

WHEREFORE, Plaintiff, JAMES EASTON, demands judgment against Defendants for:

(i)     All wages and benefits lost, including interest, as a result of their wrongful and willful acts;

(ii)    Reinstatement, and in lieu of reinstatement, front pay;

(iii)   Liquidated damages;

(iv)    Reasonable attorney's fees and costs; and

(v)     Such further relief as the Court deems just and proper.

## COUNT III
## FCRA – DISABIITY DISCRIMINATION AGAINST ALL DEFENDANTS
## (ALTERNATIVE TO COUNT IV AND V)

55.     EASTON incorporates the allegations made in paragraphs 1 through 44 above as though fully set forth here.

56.     EASTON was a qualified individual with a disability who was able to perform the essential functions of his job.

57.     As a result the violation of the Section 760.10(a), Florida Statutes, EASTON has been damaged.

58.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., engaged in intentional discrimination against EASTON and did so with malice or reckless indifference to EASTON's statutorily protected rights.   Therefore, EASTON is entitled to the recovery of punitive damages.

59.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., terminated EASTON because of his disability in violation of Section 760.10(a), Florida Statutes.

60.     Defendant, GILBANE BUILDING COMPANY, is liable as the successor of Defendant, W.G. MILLS, INC.

WHEREFORE, Plaintiff, JAMES EASTON, demands judgment against Defendants for:

(i)     All wages and benefits lost, including interest, as a result of his unlawful discharge;

(ii)    Reinstatement, and in lieu of reinstatement, front pay;

(iii)   Damages for the emotional distress arising from his unlawful discharge;

(iv)    Punitive damages;

(v)     Reasonable attorney's fees and costs; and

(vi)    Such further relief as the Court deems just and proper.

## COUNT IV
## FCRA – PERCEIVED DISABIITY DISCRIMINATION AGAINST ALL DEFENDANTS (ALTERNATIVE TO COUNT III AND V)

61.     EASTON incorporates the allegations made in paragraphs 1 through 44 above as though fully set forth here.

62.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., regarded EASTON as being a person with a disability.

63.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., terminated EASTON because of his disability in violation of Section 760.10(a), Florida Statutes.

64.     As a result the violation of the Section 760.10(a), Florida Statutes, EASTON has been damaged.

65.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., engaged in intentional discrimination against EASTON and did so with malice or reckless indifference to

EASTON's statutorily protected rights.   Therefore, EASTON is entitled to the recovery of punitive damages.

66.   Defendant, GILBANE BUILDING COMPANY, is liable as the successor of Defendant, W.G. MILLS, INC.

WHEREFORE, Plaintiff, JAMES EASTON, demands judgment against Defendants for:

(i)     All wages and benefits lost, including interest, as a result of his unlawful discharge;

(ii)    Reinstatement, and in lieu of reinstatement, front pay;

(iii)   Damages for the emotional distress arising from his unlawful discharge;

(iv)    Punitive damages;

(v)     Reasonable attorney's fees and costs; and

(vi)    Such further relief as the Court deems just and proper.

## COUNT V
## FCRA –RECORD OF DISABIITY DISCRIMINATION
## AGAINST ALL DEFENDANTS
## (ALTERNATIVE TO COUNT III AND IV)

67.   EASTON reincorporates the allegations made in paragraphs 1 through 44 above as though fully set forth herein.

68.   At the time of his termination, EASTON was an individual with a record of a disability.

69.   Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., terminated EASTON because of his record of having a disability in violation of Section 760.10(a), Florida Statutes.

70.   As a result the violation of the Section 760.10(a), Florida Statutes, EASTON has been damaged.

71.     Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., engaged in intentional discrimination against EASTON and did so with malice or reckless indifference to EASTON's statutorily protected rights.   Therefore, EASTON is entitled to the recovery of punitive damages.

72.     Defendant, GILBANE BUILDING COMPANY, is liable as the successor of Defendant, W.G. MILLS, INC.

WHEREFORE, Plaintiff, JAMES EASTON, demands judgment against Defendants for:

(i)     All wages and benefits lost, including interest, as a result of his unlawful discharge;

(ii)    Reinstatement, and in lieu of reinstatement, front pay;

(iii)   Damages for the emotional distress arising from his unlawful discharge;

(iv)    Punitive damages;

(v)     Reasonable attorney's fees and costs; and

(vi)    Such further relief as the Court deems just and proper.

## COUNT VI
## FCRA – RETALIATION FOR OPPOSITION
## TO UNLAWFUL EMPLOYMENT PRACTICE
## AGAINST ALL DEFENDANTS

73.     EASTON reincorporates the allegations made in paragraphs 1 through 44 above as though fully set forth herein.

74.     EASTON engaged in expression protected by Section 760.10(7), Florida Statutes, in opposing the unlawful employment practices of Defendants, W.G. MILLS, INC. and MSH HOLDING, INC.

75.    Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., terminated EASTON because of opposition to their unlawful employment practices in violation of Section 760.10(a), Florida Statutes.

76.    As a result the violation of the Section 760.10(a), Florida Statutes, EASTON has been damaged.

77.    Defendants, W.G. MILLS, INC. and MSH HOLDING, INC., engaged in intentional discrimination against EASTON and did so with malice or reckless indifference to EASTON's statutorily protected rights.   Therefore, EASTON is entitled to the recovery of punitive damages.

78.    Defendant, GILBANE BUILDING COMPANY, is liable as the successor of Defendant, W.G. MILLS, INC.

(i)    All wages and benefits lost, including interest, as a result of his unlawful discharge;

(ii)   Reinstatement, and in lieu of reinstatement, front pay;

(iii)  Damages for the emotional distress arising from his unlawful discharge;

(iv)   Punitive damages;

(v)    Reasonable attorney's fees and costs; and

(vi)   Such further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury with respect to all claims so triable.

Dated this 4th day of October, 2013.

Respectfully submitted,

THOMAS J. PILACEK & ASSOCIATES
Winter Springs Town Center

158 Tuskawilla Road, Suite 2320
Winter Springs, FL  32708
Telephone:  407-660-9595
Facsimile:  407-660-8343
E-Mail:         tpilacek@pilacek.com
                   jblitch@pilacek.com

By: _____
        Thomas J. Pilacek, Esquire
        Florida Bar No.:  143576
        Joseph E. Blitch, Esquire
        Florida Bar No.:  40592

Counsel for Plaintiff